(No. 26244.—

LEONA BRISKE, Appellant, *vs.* THE VILLAGE OF BURNHAM *et al.* Appellees.

*Opinion filed January 20, 1942—Rehearing denied March 10, 1942.*

H. MEYER SIMBORG, and EARL J. WALKER, for appellant.

MARKMAN, DONOVAN & SULLIVAN, (SAMUEL K. MARKMAN, and HENRY O. NICKEL, of counsel,) for appellee The Village of Burnham; WINSTON, STRAWN & SHAW, (DOUGLAS C. MOIR, of counsel,) for other appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

The plaintiff, Leona Briske, brought an action in the circuit court of Cook county against the defendants, the village of Burnham, the New York, Chicago and St. Louis Railroad Company and the Baltimore & Ohio Chicago Terminal Railroad Company, to recover damages for personal injuries sustained on September 21, 1935, when an automobile in which she was riding as a guest struck a barricade across a vacated street in the village of Burnham. At the conclusion of plaintiff's evidence and, again, at the close of all the evidence, defendants' motions for a directed verdict were denied. A jury returned a verdict of $3000 in favor of plaintiff, and judgment was rendered on the verdict. Upon appeal, the Appellate Court for the First District reversed the judgment, without remanding, and entered judgment for defendants and against plaintiff for costs. (*Briske* v. *Village of Burnham,* 308 Ill. App. 531.) We have granted leave to appeal.

August 12, 1931, the village of Burnham passed an ordinance vacating Entre avenue from its intersection with Pullman avenue to Brainard avenue. The ordinance provided that it should become effective upon being recorded in the office of the Recorder of Deeds of Cook county and when Burnham avenue should be opened to public travel. These two conditions were satisfied. A certified copy of the ordinance was recorded April 22, 1933, and Burnham avenue was opened to public travel on December 20, 1933. Prior to the day named, motorists driving north into Hegewisch and Chicago frequently used Entre avenue. The action of the village in vacating this portion of the street was taken conformably to a plan approved by the Illinois Commerce Commission for extending and improving certain highways. Its approval was required because of the necessity of the railroads relocating some of their tracks. The Commerce Commission's approval of the plan was conditioned upon the portion of Entre avenue, previously described, being closed to public use as soon as the Burnham avenue crossing should be opened for public travel. The railroads involved paid the village of Burnham for the land taken. The defendant railroad companies used a portion of vacated Entre avenue as a mode of ingress to and egress from their property. Admittedly, none of the defendants erected or maintained a warning sign with respect to Entre avenue being vacated beyond Pullman avenue. About one hundred and twenty-five feet northeast of Pullman avenue the terminal railroad company maintains a switch track running parallel with Pullman avenue. Adjoining the track on the northwest side is a regular cross-buck warning signal. A barricade, consisting of a solid rail, about three and one-half or four feet in height, extends completely across the vacated street two hundred feet northeast of Pullman avenue and about fifty feet northeast of the terminal railroad company's property.

Tracks of the New York, Chicago and St. Louis Railroad Company are fifty feet beyond, or northeast of the barricade. This rail, on the day of the accident, was painted in alternate black and white stripes, and held in place by four or five uprights driven into the pavement. At the top of the barricade in the center was a red reflector, described as six inches, eight inches, and one foot square by witnesses upon the trial. The evidence fails to disclose when the barricade was erected or who erected it.

The collision resulting in this action occurred almost two years subsequent to the vacating of Entre avenue. September 21, 1935, about 9:30 P. M., Stanley Jakubcyk and a friend, Casimer Francus, called at plaintiff's home in Calumet City. Shortly thereafter, the young men, plaintiff and Ann Warchol departed in Jakubcyk's Ford automobile, intending to visit a ballroom in Hegewisch, about a mile and a half distant. Jakubcyk and plaintiff occupied the front seat and the other couple sat on the rear seat. They proceeded north on Burnham avenue, turned left on Pullman avenue and drove in a northwesterly direction on this street until it intersected with the vacated street, previously known as Entre avenue. Jakubcyk testified that at the point where he turned northeast on Entre avenue there was a light on the corner, and that the street was not only well paved but was in very good condition. The atmosphere, it is conceded, was clear and the pavement dry. According to his testimony, as he approached the railroad tracks he observed a cross-arm sign on the left-hand side bearing the legend "Railroad Crossing Danger," reduced the speed of his car to about fifteen or twenty miles an hour, looked down the tracks to see if any trains were approaching, and "I think everything just went black in front of me. After that we hit that barricade." Testifying further, Jakubcyk said that he was watching the street ahead as he drove along but did not observe or see any

barricade or structure across the street; that later he observed the barrier consisted of a solid rail in the center of which was a red light, a piece of glass, adding: "But you couldn't see it unless you got on top of it, that is a car with two lamps. * * * All I noticed was that the rail was just like any other common rail." The witness also stated that he had no knowledge or information that the rail was across the road and that there was no other illumination on the street excepting the light previously mentioned, at the intersection of Pullman and Entre avenues. Jakubcyk declared he had not driven on Entre avenue for six or seven years prior to the accident. On cross-examination, he testified that his driving lights were in operation at the time of the collision; that they were in good condition and reflected light approximately two hundred feet ahead. He insisted that the barrier was not painted, saying: "It was just rusty, that is all it was."

Casimer Francus, one of the occupants of the car, testified that the street at the intersection of Entre and Pullman avenues was paved; that the car was running smoothly; that he saw a cross-sign on the left-hand side of the street, but that he did not, however, observe anything in front of him. According to Francus, the headlamps on the automobile were lighted. He also stated that the railroad crossing sign was about fifty feet from the barrier; that he had been on the street a number of years before when it was open and that he had no knowledge or notice that it was either open or closed on the evening of the accident. He confirmed Jakubcyk's testimony to the effect that from the time they passed the crossing sign until the moment of the collision the car was traveling at the rate of fifteen or twenty miles an hour. Plaintiff testified that after passing the cross-arm she and Jakubcyk looked up and down the railroad tracks to ascertain whether any trains were coming, and that as none were approaching, "we looked ahead

at first, then we hit into something." In particular, she stated that although she had been looking straight ahead she did not see anything ahead of her on the highway.

Grover C. Turner, tower man at Burnham avenue, was the only witness who observed the barricade immediately before the accident. He testified that about 9:45 P. M. he heard and saw Jakubcyk's car traveling between thirty-five and forty miles per hour on Pullman avenue; that he saw the car turn; that its speed was not moderated from the time he first noticed it until the instant it crashed, and that the red light on the barrier reflected back toward the car.

Additional facts and circumstances merit mention. Between the time of leaving plaintiff's home and the accident, Jakubcyk and his companions visited a tavern in Burnham where, admittedly, he had two glasses of beer and plaintiff one beer. Francus had at least one beer. Turner smelled alcohol on Jakubcyk's breath immediately after the accident. Jakubcyk denied being under the influence of liquor.

To obtain a reversal of the judgment of the Appellate Court plaintiff makes the contention, among others, that the village of Burnham was negligent in vacating the street and then leaving it, apparently a public thoroughfare, in a dangerous condition for travelers, without sufficient notice or warning at the point of vacation that the street beyond was closed and dangerous, and that, in the absence of such notice, the village remained liable for defects in the street. As to the defendant railroad companies, plaintiff urges a duty rested upon them to advise or warn travelers using the abandoned part of the street that it was closed to public travel, and, in particular, that they should have placed a notice and located a warning at a sufficient distance from the barricade, namely, at the intersection of Entre avenue with Pullman avenue, to reasonably prevent danger to travel in the ordinary way. Defendants deny they were guilty of any negligence or other breach of duty,

and maintain, instead, that they were guilty of no negligence and, further, that the proximate cause of the accident was the negligence of the driver, Jakubcyk, the presence of the barricade being a condition and not a proximate cause. Our inquiry is limited to a determination of the proximate cause of the accident.

If a negligent act or omission does nothing more than furnish a condition making an injury possible, and such condition, by the subsequent independent act of a third person, causes an injury, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury. (*Storen* v. *City of Chicago,* 373 Ill. 530; *Illinois Central Railroad Co.* v. *Oswald,* 338 id. 270; *Hartnett* v. *Boston Store of Chicago,* 265 id. 331; *Seith* v. *Commonwealth Electric Co.* 241 id. 252.) An intervening efficient cause is a new and independent force which breaks the causal connection between the original wrong and the injury and itself becomes a direct and immediate cause of the injury. (*Illinois Central Railroad Co.* v. *Oswald, supra; Seith* v. *Commonwealth Electric Co. supra.*) The cause of an injury is that which actually produces it, while the occasion is that which provides an opportunity for the causal agencies to act. (*Illinois Central Railroad Co.* v. *Oswald, supra; Phillabaum* v. *Lake Erie and Western Railroad Co.* 315 Ill. 131.) Manifestly, neither the fact that the vacated street was open to public travel nor the existence of the barricade did anything more than furnish a condition, and if either constituted negligence on the part of the respective defendants they were not acts concurrent with the negligence of Jakubcyk, the driver of the automobile in which plaintiff was a guest. In short, the intervening efficient cause of plaintiff's injuries was Jakubcyk's negligence. Uncontroverted testimony discloses that the driver of the car was able to see the crossing sign ten or fifteen feet in the air and fifteen feet to the side of the vacated street. The night was clear, and the pavement

dry and in good condition. The lights on the car were the same height as the barricade and Jakubcyk admitted that they reflected 200 feet ahead of him. After crossing the tracks of the terminal railroad company, he drove his car an additional sixty-five feet before striking the obstruction. The barricade and the reflector on it were plainly visible. According to Jakubcyk's own testimony, his lights were functioning properly and it follows, necessarily, that it was his inattention which constituted the negligence occasioning injuries to his guest. The conclusion is inescapable, under these circumstances, that Jakubcyk could and would have stopped his car had he used his powers of observation. The law does not permit him to say that he did not see the obstruction when, if he had properly exercised his faculty of sight, he would have seen the barrier. (*Thomas* v. *Buchanan,* 357 Ill. 270; *Dee* v. *City of Peru,* 343 id. 36.) As this court observed in the case last cited: "The law will not tolerate the absurdity of permitting one to testify that he looked and did not see the danger when the view was unobstructed and where, if he had properly exercised his sight, he would have seen it. [Citations.] It is the duty of a passenger in a vehicle, where he has an opportunity to learn of danger and to avoid it, to warn the driver of such vehicle of approaching danger, and he has no right, because someone else is driving, to omit reasonable and prudent efforts on his own part to avoid danger."

The only testimony tending in any degree to sustain plaintiff's burden of proving due care is her answer, "No, I did not," to the query, "Did you see anything ahead of you on the highway?" The observations made with respect to Jakubcyk are equally applicable to plaintiff. Since Jakubcyk's negligence, and not the presence of the barricade, was the proximate cause of the accident, plaintiff has wholly failed to prove the exercise of due care.

It is true, as plaintiff maintains, that contributory negligence is ordinarily and preeminently a question of fact to be decided by a jury. Contributory negligence becomes, however, a question of law when it can be said that all reasonable minds would reach the conclusion, under a particular factual situation, that the facts did not establish due care and caution on the part of the person charged therewith. (*Thomas* v. *Buchanan, supra; Illinois Central Railroad Co.* v. *Oswald, supra.*) In such cases, the court should instruct the jury to render a verdict for the defendants. (*Wilson* v. *Illinois Central Railroad Co.* 210 Ill. 603.) Considering the evidence in its aspects most favorable to the plaintiff, the evidence demonstrates that the proximate cause of plaintiff's injuries was the negligence of Jakubcyk, the driver of the car. There is no substantial testimony to the contrary. Accordingly, the circuit court erred in overruling defendants' motion for a directed verdict, and the Appellate Court properly reversed its judgment.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*