(No. 4420—)

JOHN TERRACINO, GWENDOLYN TERRACINO AND MARY MEYERS, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed January 8, 1952.*
*Petition of Claimants for rehearing denied February 8, 1952.*

GEORGE YELLEN, Attorney for Claimants.

IVAN A. ELLIOTT, Attorney General; WILLIAM H. SUMPTER, Assistant Attorney General, for Respondent.

LANSDEN, J.

This is an action allegedly based on the negligence of respondent in the operation and maintenance of one of its highways.

On July 2, 1950, about 9:30 A.M. claimant, John Terracino, age 43, was driving his 1950 Nash Ambassador automobile, accompanied by his wife, Gwendolyn Terracino, claimant herein, who was sitting by his side in the front seat, and, claimant, Mary Meyers, who was seated on the right rear seat. The car was travelling at about thirty miles per hour in a southwesterly direction along and upon the inside lane of the southwest bound four-lane paved highway, known as U. S. Route No. 66, about seventeen miles from Joliet, Illinois, and approximately four miles northeast of the intersection of U. S. Route No. 66 and U. S. Route No. 66 alternate.

At said time and place an automobile driven by one Mr. McNeil was proceeding about forty miles per hour in a northeasterly direction upon said highway, and apparently struck some depression in the pavement and swerved to the left, colliding head on with the automobile driven by claimant, John Terracino, damaging his automobile, and causing bodily injury to all three claimants herein, and death to Nellie Randolph.

It appears from respondent's exhibit No. 1, the Departmental Report of the Division of Highways, which was received in evidence, that on June 5, 1950 the Department of Public Works and Buildings awarded a contract to the Black Top Roads Company for resurfacing that part of Route U. S. No. 66 from its junction with Alternate Route U. S. No. 66 northeasterly to the DuPage-Cook County line. This section of highway is slightly in excess of seven miles in length, and at the time of claimant's accident had a concrete wearing surface 40 feet in width. Two lanes were available for each direction of traffic; and, on June 22, 1950, the Division of Highways furnished and supervised the erection of

signs at the ends and at intermediate points along said section of highway. Immediately west of the DuPage-Cook County line a standard X-12 sign was erected on the north highway shoulder facing east. This sign, 8 feet wide and 5 feet high, bore the legend "PAVEMENT PATCHING AHEAD. This road is being kept open for your convenience. DRIVE WITH CAUTION. Barricade and one way traffic ahead." Eight hundred feet west was erected a standard X-14 sign on the north shoulder facing east, which bore the legend "Speed limit 25 M.P.H. in repair zones." This sign is 42 inches wide and 36 inches high. A standard X-13 sign was erected on the north shoulder of Route U. S. No. 66, a short distance west of its intersection with State Route No. 83. This sign, 8 feet long and 6 feet high, bears the legend, "U. S. 66—7 MILES, under construction, patching, widening, and resurfacing. This road is being kept open for your convenience. DRIVE WITH CAUTION." Four hundred feet west of the X-13 sign was erected a second X-14 sign, and a third X-14 sign was erected on the north shoulder of Route U. S. No. 66, 400 feet west of its intersection with Downers Grove Road; and for east bound traffic X-13 and X-14 signs were erected at the junction of Route U. S. No. 66 and Alternate Route U. S. No. 66. An X-14 sign was erected on the south shoulder of Route U. S. No. 66, 400 feet east of Lemont Road. All of the aforesaid signs were in place on July 1 and 2, 1950.

The existence and locations of these signs were also verified by the testimony of witnesses in this case.

Claimant, John Terracino, testified that he saw the other car involved in the accident, driven by Mr. McNeil, when about 150 feet away, approaching in a northeasterly direction upon said highway, strike a hole

about one foot wide, one foot six inches long and two inches deep, and then swerve to the left into the path of claimant's car. Claimant, John Terracino, testified further that he then applied his brakes, and steered his car to the right, and, as he did so, said oncoming car swung back to the right colliding head on with his automobile. He further stated that the pavement was rough, jumpy and holey, when the accident happened; that at the time of the collision the two right wheels of his car were on the shoulder, and the two left wheels on the pavement.

Claimants were all seriously injured in the collision, and were taken in an ambulance to the St. Joseph's Hospital in Joliet, Illinois, where they all received medical treatment and hospitalization. Claimant, John Terracino, remained there from July 2, 1950 to August 15, 1950; claimants, Gwendolyn Terracino and Mary Meyers, were there from July 2, 1950 to September 9, 1950. Gwendolyn Terracino also went to the Wesley Memorial Hospital on January 17, 1951, where surgery was performed on her knee on January 18, 1951.

At the time of the accident, the skies were clear, the sun was shining, the pavement was dry, and there was no other traffic upon said highway, except the cars involved in the collision.

Route U. S. No. 66 from its junction with Alternate Route No. 66 northeasterly to the DuPage-Cook County line, and upon which highway the accident took place, was being repaired and resurfaced. The first part of the operation was started in May, 1950, or the first part of June, 1950. It consisted of mud packing, which is a mixture of cement, lime and mud; patching the breaks, taking out broken up concrete, stone and brick, and patching up the holes. This work was

finished about June 23, 1950, at which time work was begun to pull out the equipment. The next part of the operation of resurfacing with a mixture of asphalt and stone, which was being carried on by an independent contractor, was then started, and was in operation at the time of said accident. While the resurfacing operation was being carried out, the contractor put up barricades, and stationed flagmen where needed. When the resurfacing of a part of the highway was completed, the contractor took down the barricades, removed them from the highway, and made a smooth lead off by tapering the resurfacing material smooth with the pavement being covered.

As the work of mud packing and patching was being carried on, the respondent's workmen went up and down the highway looking for patch spots, and the road was rechecked for holes and bad spots before the equipment was pulled out. The highway under repair, where the accident occurred, was checked by respondent's workmen two days before the accident happened, and again the day after the accident occurred, and no holes or depressions were discovered.

From the foregoing summary of the facts in the case, we are compelled to conclude that claimants are not entitled to awards.

The State is not an insurer of all accidents, which may occur by reason of the condition of its highways. *Beenes* vs. *State*, No. 4377, opinion filed October 5, 1951.

However, the State is negligent, if, having knowledge of dangerous conditions on its highways, it fails to warn users of the highways of such dangerous conditions. *Pomprowitz* vs. *State*, 16 C.C.R. 230; *Rickelman* vs. *State*, 19 C.C.R. 54; *Rommel* vs. *State*, No. 4306, opinion filed February 9, 1951; *Cruger* vs. *State*, No.

4271, opinion filed October 13, 1950. Cf: *Mowery* vs. *City of Mounds*, 245 Ill. App. 338.

However, the record in this case discloses that the State had fulfilled its obligation to users of the highways by the erection of large, unambiguous and prominent signs that adequately warned of the conditions users would encounter in the construction area. Mr. McNeil was apparently not sufficiently impressed with the warning signs that he must have seen, and, we, therefore, absolve respondent of any liability for the accident involved herein, and hold that it was the negligence of McNeil, and not that of respondent, which caused the serious injuries and substantial damages to claimants.

We have intentionally not undertaken a discussion of the doctrine of "intervening agency" as announced by our Supreme Court in several cases, such as, *Illinois Central R.R. Co.* vs. *Oswald*, 338 Ill. 270; *Briske* vs. *Village of Burnham*, 379 Ill. 193; and *Merlo* vs. *Public Service Co.*, 381 Ill. 300, because we feel that such doctrine, assuming its validity, has no application to the facts in this case. Cf. *Leon Green, Illinois Negligence Law* IV, 40 Ill. L. R. 12-27 (May-June 1945).

Awards to claimants are, therefore, denied.