Clarence ALBERS, Plaintiff-Appellee,

v.

**CONTINENTAL GRAIN COMPANY,**
Defendant-Appellant.

No. 11203.

United States Court of Appeals,
Seventh Circuit.

March 21, 1955.

William C. Dunham, East St. Louis, Ill., L. A. Robertson, St. Louis, Mo., Martin F. Oehmke, Howard F. Boman, East St. Louis, Ill., for appellant.

Maurice B. Johnston, Eldon E. Hazlet, Carlyle, Ill., James H. Donnewald, Breese, Ill., for appellee.

Before DUFFY, Chief Judge, and FINNEGAN and SCHNACKENBERG, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

Defendant appeals from a judgment of the District Court awarding plaintiff damages for personal injuries sustained in a building used by defendant for the purpose of receiving grain purchased by it from various vendors and delivered to said building in trucks by or at the direction of the vendors. The judgment is based upon the verdict of a jury. The errors relied on arise out of the court's failure to grant defendant's motions to direct a verdict for the defendant.

The first contention of the defendant is that the plaintiff failed to prove that he was in the exercise of due care and caution for his own safety at the time of and immediately prior to the occurrence of the accident which caused his injuries.

Viewed in a light most favorable to plaintiff the evidence reveals the facts now stated by us.

At its building in East St. Louis, Illinois, defendant maintained a combination scale and hoist for the weighing and dumping of truckloads of grain. On August 25, 1952, plaintiff, 26 years old, was working as a truck driver for August Von Vokel who was in the trucking business. He had previously driven a truck for the state of Illinois and had operated a filling station where there was a hydraulic hoist driven by power. He had also driven trucks equipped with automatic hoists for the purpose of dumping.

At about 3:15 p. m. on the day mentioned, plaintiff drove a load of wheat to defendant's building, where he had never been before. The day was clear and dry. The sun was shining. As other trucks were ahead of him, he was obliged to wait his turn for unloading, during which time he removed the tarpaulin covering the grain and then went inside the entrance to the building where the dumping was taking place and sat on a bench to the rear of the truck.

The method of unloading was as follows: A driver would back his loaded truck in a northerly direction into the building thus placing it upon a platform, the rear wheels resting against wooden blocks placed against them so as to prevent the truck from going further north and off of the platform. This platform had a raised curb or guard rail 4 to 6 inches in height along its easterly and westerly edges. The platform floor fit flush with the floor surface of the building, there being about a ¾ inch crack between them. After a loaded truck had been placed upon the platform and its rear wheels blocked as aforesaid, an employee of defendant would cause the platform to rise with the south end moving in and upward and forward arc, and with the north end of the platform moving as a hinge, thus bringing the platform and the loaded truck to an angle of about 35 to 45 degrees with the floor of the building.

The platform was raised by motor and lowered either by that power or by gravity. On the day in question it was being lowered by gravity. When plaintiff's turn came, he drove his truck on the platform, stopped it, shut off the motor, backed against the blocks and got out of the truck. He took with him to the rear of the truck some tools to use in removing its end gate. In due course the end gate was removed and the front of the truck elevated, permitting the grain to run into a grating in the floor to the rear of the truck and down into a hopper. Plaintiff watched the platform rise, elevating his truck with it, and he saw the grain running out of the back of the truck. He was then at the rear of the truck, and the grating, the platform and the truck were immediately in front of him. As the truck was about 8 feet from him, he said that he could not help seeing it. Defendant's employee White was to plaintiff's right, cleaning up the grain at the same time that it was passing out of the truck. When plaintiff saw that the truck was empty, he intended to put the tail gate back in the bed of the truck "when it got down."

Plaintiff waited about 4 or 5 minutes and then White told him to watch his tools and not let them fall into the grating. White did not tell him to put the tools in the truck. Plaintiff testified that he did not know then whether the platform was descending but that he stayed there. He never looked ahead of the truck to see where the platform was. He testified that, when the platform with the truck on it was up, it was at about a 35 to 45 degree angle, and that he could not have stood on the ground level and reached the door handle of the truck cab, which handle would then be above his head. He was 6 feet tall and with a reach of 33 inches. With a crow-bar in his right hand and two wrenches and a pair of pliers in his pocket, plaintiff then walked around the east side of the truck. The floor was in good shape. Plaintiff testified that it was light in there. The big doors on the south end and north end of the building were both open and they let in a lot of light. He walked about 16 feet south from the back end of the truck and as he got to just about where he figured the door handle would be, he

turned to the right to reach for it. He was not looking to see if the platform was down. He was watching where he was walking. The truck was about 2 or 3 feet from the east wall of the building, at the place where he was walking. He was not watching the truck. He testified that if the platform was then being lowered, and if he had been watching, he could have seen it.

When he got close to where he stopped he was looking at the door handle which looked like it was down to him. A matter of seconds after he got hold of the handle he felt pain in his foot. He "hollered" at White to start the lever "so it would go up so he could get his foot free." White did that. Three or four inches of the platform came down on the toes of one foot which were over the edge of the floor. Plaintiff testified that he got his foot caught because he momentarily forgot his own lifting equipment was not being used on the truck.

■ These facts, together with the inferences which may be reasonably drawn therefrom, indicate to any reasonable person that plaintiff, with his past experience in and about motor vehicle hoists and the use of trucks, and in the possession of normal eyesight for a person of 26 years of age, was bound to know from his visual observation of the unloading operation of his own truck as well as those that preceded it on the day in question, that his placing of a part of his foot beyond the edge of the floor and in the fixed path of the descending platform was sure to result in an injury. His failure to use due care to keep his foot entirely out of that path was negligence which contributed proximately to the injury of which he complains. If we approve the judgment of the District Court we are in effect making defendant an insurer of the personal safety of plaintiff. This we have no right to do.

■ It is true, as plaintiff maintains that contributory negligence is ordinarily and pre-eminently a question of fact to be decided by a jury. However, contributory negligence becomes a question of law when it can be said that all reasonable minds would reach the conclusion, under a particular factual situation, that the facts did not establish due care and caution on the part of the person charged therewith. In such cases, the court should instruct the jury to render a verdict for the defendants. Briske v. Village of Burnham, 379 Ill. 193, at page 201, 39 N.E.2d 976; Illinois Central R. Co. v. Oswald, 338 Ill. 270, at page 275, 170 N.E. 247.

■ The law does not afford to one who exposes himself to danger the privilege of recovering damages for an injury arising from his actions, which injury might have been avoided by the use of reasonable care for his own safety. Dee v. City of Peru, 343 Ill. 36, at page 44, 174 N.E. 901.

■ A party has no right to knowingly expose himself to danger and then recover damages for an injury which he might have avoided by the use of reasonable precaution. Lovenguth v. City of Bloomington, 71 Ill. 238; Beidler v. Branshaw, 200 Ill. 425, at page 431, 65 N. E. 1086.

Inasmuch as the record shows, as a matter of law, that plaintiff was guilty of contributory negligence which was the proximate cause of his injury, he is barred from a recovery herein, and it is unnecessary for us to consider the other contentions of the defendant. The judgment of the District Court is therefore reversed.