(No. 92-CC-2705–

WILLIE MILLER, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed April 25, 1997.*

*Order on petition for rehearing filed September 4, 1997.*

SACHS, EARNEST & ASSOCIATES, LTD. (DAVID M. STERNBERG, of counsel), for Claimant.

JAMES E. RYAN, Attorney General (JOEL CABRERA, Assistant Attorney General, of counsel), for Respondent.

OPINION

SOMMER, C.J.

Claimant Willie Miller is seeking damages from the State for injuries sustained as a result of an accident while he was performing plumbing work at the Danville Correctional Center (hereinafter "DCC"). At the time of the incident, April 4, 1991, the Claimant was an inmate. The complaint alleges that "scaffold stays, supports or other similar mechanical devices" were used in the performance of the work at that the Structural Work Act (740 ILCS 150/0.01 *et seq.*) was applicable. Count II of the complaint alleges that the Respondent was negligent. It is alleged that the Claimant sustained injuries while attempting to repair a hot water pipe. An explosion occurred; the Claimant fell 30 feet and was injured.

## 1. Procedural Background

On July 20, 1995, the parties, through their counsels, contacted the Commissioner and indicated that they would stipulate to a record and a hearing would not be necessary.

Later, the Commissioner received a copy of a letter, dated August 24, 1995, from the Respondent's counsel to the Claimant's counsel. The letter states that a copy of the signed agreement between the parties, regarding the record and briefing schedule, was being transmitted to the Claimant's counsel and that a copy of the record was forwarded to the Commissioner. The Commissioner did not receive a "record." No copy of the parties' agreement or briefing schedule was received.

On July 18, 1996, a letter was mailed to the parties' counsel requesting that they advise the Commissioner of the status of this claim. The letter informed the parties that the Commissioner had not received a stipulated record or briefs.

On August 15, 1996, the Respondent filed a brief and argument for Respondent. The notice of filing indicates that a stipulated record was also filed; however, the Commissioner did not receive any documents other than the respondent's brief. The Claimant did not respond to the July 18, 1996, letter, and has not filed a brief or any other documents.

The Respondent's brief, at page one, identifies the seven documents which the parties agreed would comprise the stipulated record. Of the documents referenced, the Commissioner only had possession of: (1) the complaint; (4) Respondent's answer to Claimant's interrogatories; and (5) notice to produce. Copies of the following documents were not provided: (2) Plaintiff's answers to interrogatories; (3) Claimant's group exhibit C; (6) deposition

of Rayland Jackson; and (7) deposition of Willie Miller. The deposition of Rayland Jackson has since been found in the Court's files.

It is each party's burden to ensure that the record contains information that the particular party believes is necessary for its case-in-chief. To the extent that the Respondent's brief asserts that certain facts exist, this Court will accept those facts because they are not rebutted, objected to, or contested by the Claimant. To the extent that the Claimant's verified complaint alleges facts, this Court will accept those facts unless they are rebutted in the Respondent's brief.

## II. Statement of Facts

Prior to his incarceration, the Claimant received training in plumbing, completed a five-year apprenticeship and became a licensed plumber. He had years of experience in plumbing work.

While incarcerated at DCC, the Claimant did plumbing work every day. He soldered pipes every other day and was familiar with the procedures to be followed when soldering a pipe and draining or bleeding a pipe. Hundreds of times he performed the procedure of cracking a pipe to release trapped air.

On April 4, 1991, the Claimant was working on a pipe in the gymnasium at DCC when the joint burst, releasing hot water. He tried to avoid the water and jumped from a lift he had used to reach the pipe. When he hit the ground, he received multiple broken ribs and other injuries. The Claimant had been trained in the operation of the lift and had used it prior to April 4. The incident reports contained in the documents produced by the Respondent do not establish that Miller "jumped," but rather that he moved to get away.

The Respondent's version of the facts can be stated succinctly. The Claimant began working on the pipes before they were drained. He did not make sure the pipes were drained and did not check the petcock to release pressure in the pipe. The petcock was later found to be closed and should have been open to relieve pressure. He was not ordered to begin working on the pipe. The Respondent's employee did not give the Claimant permission to begin his work and did not tell the Claimant the system was down.

### III. Respondent's Argument

The Respondent, citing *Albers v. Continental Grain Co.* (1995), 220 F.2d 847, and *Gavin v. State* (1986), 39 Ill. Ct. Cl. 146, argues that the Claimant negligently contributed to his injury by exposing himself to possible danger which he could have avoided by use of reasonable care. The Respondent asserts that the Claimant's lack of due care for his own safety proximately caused his injuries.

In the alternative, the Respondent argues that the Claimant did not prove by a preponderance of the evidence that the Respondent breached its duty of reasonable care. The State is not an insurer of the safety of prisoners under its care. *Hunter v. State* (1994), 46 Ill. Ct. Cl. 335; *Starks v. State* (1992), 45 Ill. Ct. Cl. 281. The Respondent contends that Jackson, the Respondent's employee, was in the process of draining the pipes when the incident occurred and that he did not give the Claimant the okay to heat the pipe or use the lift.

### IV. Claimant's Argument

The Claimant's position is that Jackson did order him to begin work on the pipe and use the lift.

In relation to the Structural Work Act count, the Claimant asserts that the lift "had no safety devise attached so as to prevent one from falling off," and did not "give proper and adequate protection."

This Court finds that there are insufficient facts to conclude that the Respondent failed to provide proper scaffolding as would be required under the Structural Work Act. Whether the Structural Work Act remains applicable to this claim is currently before the Supreme Court, but we do not need the Supreme Court's ruling to make our finding.

Additionally, this Court finds that the Claimant has not proven by a preponderance of the evidence that the Respondent's agent ordered him to work on the pipe when he began. Further, this Court finds that the Claimant failed to open the petcock to relieve pressure on the pipe; thus, the proximate cause of the Claimant's injuries was his own negligence. It is therefore ordered that this claim is denied.

## ORDER

SOMMER, C.J.

This cause coming to be heard on the Claimant's petition for rehearing, due notice having been given, and this Court being fully advised,

Finds that this Court's opinion of April 25, 1997, was entered expressly without the benefit of parts of the stipulated "record." Both parties agreed to provide the stipulated "record" and were given written notice when such was not provided.

This Court has read and examined that portion of the stipulated "record" now presented to us by the Claimant along with that portion previously presented. Particular

attention has been given to the depositions of the Claimant, Willie Miller, and a witness, Miguel Arce, which had not been presented to us previously.

This Court's opinion has not changed. The Claimant has not proven by a preponderance of the evidence that the Respondent's agent ordered him to work on the pipe when he began. Additionally, the Claimant's failure to open the petcock was the proximate cause of the Claimant's injuries. There are insufficient facts to conclude that the Respondent failed to provide proper scaffolding under the Structural Work Act.

There is a direct conflict between the testimony of the Claimant and his supervisor, Rayland Jackson, as to whether the Claimant was told to begin work on the joint that subsequently exploded. The testimony of Jonathan Booz, a third person working on draining the pipes, does not appear in the record, even though the Claimant identifies Booz as being part of the relayed command that told him to begin work.

The petcock where Claimant Miller was working was found closed. Jackson, Miller's supervisor, had opened two of the three petcocks in the room. He stated that he assumed that Miller, as a certified plumber, would know enough to open the petcock where he was working. There is no testimony by Miller as to why he did not open the petcock.

It is therefore, ordered that the Claimant's petition for rehearing is denied.