Edmund J. Schrage, Plaintiff-Appellee, v. Allied Paper Corporation, a Corporation, Defendant-Appellant.

Gen. No. 10,373.

Third District.

February 19, 1962.

Londrigan & Londrigan, of Springfield, for appellant.

Olsen & Cantrill, of Springfield, for appellee.

CARROLL, J.

The Circuit Court entered judgment upon a jury verdict in favor of the plaintiff in the amount of $100,000 for personal injuries and property damage alleged to have been caused by defendant's negligence. Defendant's post trial motion was overruled and this appeal followed.

The defendant urges three grounds for reversal: (1) That the plaintiff was guilty of contributory negligence as a matter of law and that, therefore, the trial court erred in failing to direct a verdict for defendant; (2) that there was insufficient evidence to support two of the grounds of recovery alleged in plaintiff's complaint and that the trial court erred in denying defendant's motion to withdraw such grounds from the consideration of the jury; and (3) that the verdict is so excessive that it infers passion and prejudice on the part of the jury and that it is manifestly against the weight of the evidence.

At the time of the occurrence the plaintiff was 30 years of age, was married and had 2 children. He was in good health and had an earning capacity of approx-

imately $5,000 a year. He was engaged in hauling various commodities including livestock, quarry products, grain, etc. On July 23, 1959, he left his home at Breese, Illinois, in a truck to pick up a load of oats at Williamsville, Illinois, a few miles north of Springfield. At the time of the occurrence he was driving his truck in the northbound lane of Route 66 Bypass at about 40 miles per hour. The defendant was operating its truck in a southerly direction on the same road. The collision between plaintiff's vehicle and that of defendant occurred on a curved portion of the road. The road at the place where the collision occurred is 20 feet in width and both drivers apparently were familiar with the highway at that point. The defendant's vehicle was a tractor-trailer unit and was carrying a cargo consisting of 7 skids of paper. As the plaintiff entered the curve in the road, a Mercury automobile preceding him was struck by defendant's trailer which had slipped into the opposite lane and then overturned on top of the Mercury. At the time defendant's trailer swung into the northbound lane, plaintiff was approximately 100 feet to the rear of the Mercury. The plaintiff stated that he didn't have time to avoid colliding with the defendant's tractor. The collision occurred in the northbound lane. The plaintiff was pinned in the wreckage and subsequently removed to a hospital where he remained for 4 months. At the hospital plaintiff was attended by a Dr. Charles O. Metzmaker, who testified that plaintiff's initial complaints concerned his lower back, both groins and and both hips. He found an unstable and fractured pelvis. Whole blood and plasma were administered to reduce the effects of shock and plaintiff was placed in a pelvic sling. Multiple intravenous fluids were administered because of plaintiff's inability to retain oral nourishment. X-rays disclosed extensive pelvic fractures as well as a fracture of the sacrum. The

12

doctor testified that the fracture of the sacrum with resultant nerve damage caused a disturbance of plaintiff's rectum, bladder and affected his normal sexual capabilities. The pelvic fractures were reduced and a steel pin was surgically introduced to provide a point of traction for the bony structures. At the time of the doctor's last examination of plaintiff, January 24, 1961, plaintiff's right thigh and calf were somewhat smaller than his left because of disuse and the nerve injury. Also present was a partial foot drop of the right lower extremity and an orthopedic spring brace was prescribed to enable plaintiff to bring his foot up to a normal walking position. The doctor testified that the plaintiff continued to lose urine upon coughing and sneezing and has never recovered his ability to have sexual intercourse. The foot drop is permanent.

Dr. Floyd Barringer also testified for plaintiff to the effect that he is a neuro-surgeon and attended plaintiff at the request of Dr. Metzmaker. He found the plaintiff to be in severe pain and that there was evidence of nerve root injuries in the pelvic area. The right sacrum fracture extended up through the right fifth lumbar lamina and that the nerve roots involved controlled urinary, bowel and sexual functions. The doctor said that in his opinion the nerve damage sustained was permanent.

During the plaintiff's initial stay in the hospital he experienced a great deal of pain and was kept under continual traction of about 75 pounds for the reduction of his fractures. He states that as a result of his disability he is unable to operate an automobile or truck for long periods and that he is unable to control his bowels or urine. During 1960 he was engaged in the sale of farm implements and earned about $1,700 in commissions. The plaintiff's wife testified that prior to the accident the plaintiff was in good health and

normally worked 6 days a week. She stated that since the accident he has been unable to walk as he previously did and has been unable to drive trucks. She also stated that he was unable to perform certain ordinary household chores that he had performed prior to the accident.

Plaintiff's hospital bills were in excess of $4,000. His medical bills amounted to $678, ambulance and miscellaneous, $29 and property damage $1,900.

The witness James Merrifield testified that at the time of the occurrence he was an officer of the Illinois State Highway Police. He arrived at the scene of the occurrence only a few minutes after it happened and at that time the defendant's tractor-trailer unit was in the northbound lane and that the trailer had overturned on a Mercury automobile, crushing the occupants and that defendant's tractor had collided with plaintiff's Ford truck and plaintiff was pinned in his truck. The witness called for an ambulance and a wrecker and tried to extricate plaintiff and the occupants of the Mercury. He found no sign of life in the Mercury car. The plaintiff was conscious and was saying, "Get me out." It took about 25 minutes to remove the plaintiff from the wreckage. The officer examined the scene and discovered that the trailer appeared to have skidded approximately 95 feet in the northbound lane before colliding with the Mercury automobile; and that after the collision it continued to slide in a southerly direction about 76 feet before coming to rest. At that point the trailer and Mercury automobile were off the paved section of the highway and that the tractor remained in the left-hand lane. The plaintiff's truck also remained in the northbound portion of the highway. The officer testified that the driver of defendant's truck stated that he lost control of his vehicle at the beginning of the curve and that

14

the trailer started to jackknife and that there wasn't much he could do after the trailer started to skid. There had been a light rain and the road was damp. Numerous photographs were introduced portraying the approaches to the point of impact, the highway itself, the scene immediately following the occurrence and the damage to the vehicles.

Neil Williamson testified for the plaintiff and stated that he was driving his automobile behind the tractor-trailer unit of defendant. He was about 200 feet behind the defendant's vehicle and as the defendant's unit entered the curve the trailer portion skidded into the opposite lane and continued sliding until it collided with an approaching Mercury automobile, following which the tractor collided with the oncoming truck of plaintiff. The defendant's unit was traveling between 40 and 45 miles per hour and the witness did not observe any lights on the rear of the truck. The defendant's tractor struck the oncoming truck of plaintiff before the unit came to rest. A side road intersects Bypass 66 at the commencement of the curve and the witness continued on down this straight road. He said there was no obstruction of vision for cars coming from either direction into the curve. The witness also testified that only a few seconds elapsed between the collision with the Mercury and that involving the truck of the plaintiff.

James Galloway testified that he was at the scene shortly after the accident occurred. He said he took about 30 minutes to remove the plaintiff from the wreckage and that during that time plaintiff was screaming in apparent pain. This witness is a professional photographer and testified to certain photographs he took at the scene of the accident.

The operator of defendant's truck, William Morrison, was called by the plaintiff as an adverse witness

15

under Section 60. At the time of the occurrence he was operating a tractor-trailer unit for defendant and was carrying 7 skids of paper weighing about 32,000 pounds. He had been operating tractor-trailer units for about 24 years and that he was familiar with the curve on Bypass 66 where the accident occurred. Prior to entering the curve he had slowed because an automobile ahead had flashed its brake signals, but after this car turned off the Bypass the witness picked up speed as he entered the curve. As he was going around the curve the Mercury automobile collided with his trailer, but that he was then on his own side of the road and that the trailer did not go into the opposite lane prior to the collision. He did not observe the Mercury automobile prior to his unit coming to rest after the collision. He did not realize that a collision had occurred, but thought that he had broken a spring. He looked up and saw his trailer coming up to his left. It would then have been over the center line into the northbound lane. Defendant didn't know exactly at what point the collision with the Mercury occurred, but that after the collision the trailer continued to slide in the northbound lane and that it came to rest at right angles to the highway. Most of the trailer was off the paved portion of the highway and it had tipped over onto the Mercury. He said that when the oncoming truck of plaintiff collided with his tractor that his tractor and trailer had already come to rest.

Testifying in his own behalf witness Morrison stated that it had been raining hard prior to the accident and that as he entered the curve he was driving between 40 and 45 miles per hour. He had been observing a car preceding him and was changing gears and watching this car when he had the accident. The accident occurred just after he swung into the curve and the first thing he noticed was the trailer going

16

sideways. He tried to straighten the trailer out and didn't know anything about the collision with the Mercury until after his vehicle came to rest. He did hear a noise but thought something had broken. Just as he was getting stopped he saw another truck (plaintiff's vehicle) coming towards him. He was trying to get out of his tractor when he first saw the plaintiff's vehicle approaching and he closed the door just prior to the collision. He didn't know anything about the Mercury automobile until after he got out of his tractor and examined the wreckage and he didn't know what made his tractor swing into the opposite lane.

There is evidence indicating that the shoulder of the highway to the right of the plaintiff was free and clear of any fences, barriers or other obstructions.

The defendant complains of the trial court's refusal to direct a verdict in his behalf contending the evidence fails to show due care on plaintiff's part and that through the exercise of reasonable precaution plaintiff might have avoided the injuries complained of. In support of its contention, the defendant suggests that the proofs disclose that the plaintiff had ample opportunity to either stop his vehicle or to drive his vehicle off the highway so as to avoid the oncoming wreckage. Apparently the jury thought otherwise. In reviewing all the testimony, we find that the jury could reasonably conclude that the plaintiff did exercise due care for his own safety. At most the plaintiff had only a few seconds notice that defendant's trailer had swung into plaintiff's lane and collided with the Mercury automobile. While we have no quarrel with the authorities cited by defendant, they are not applicable to the factual situation disclosed by this record. It appears that the plaintiff was operating his vehicle in his own lane at a reasonable and proper speed, that suddenly the trailer of defendant skidded

17

into plaintiff's lane, collided with another automobile and then collided with plaintiff's truck.

In considering defendant's motion for directed verdict, the trial court was required to view the evidence in its most favorable aspects to plaintiff's case with all reasonable inferences to be drawn therefrom, in order to determine whether or not there was any evidence fairly tending to prove the essential elements of plaintiff's case. This rule is so well settled as to require no citation of authority. The defendant suggests that the trial court ought to have directed a verdict for defendant because the plaintiff was guilty of contributory negligence as a matter of law, arguing that the plaintiff's injuries were proximately caused by his failure to avoid the imminent collision with defendant's approaching vehicle. Defendant cites as authority for this contention: Carrell v. New York Cent. R. Co., 384 Ill 599, 52 NE2d 201; Briske v. Village of Burnham, 379 Ill 193, 39 NE2d 976; Ruspantini v. Steffek, 346 Ill App 470, 105 NE2d 323, and other cases all involving apparent failure on the part of a motorist to observe what could have been observed had the plaintiff been exercising ordinary care. Inherent in each of the cases cited by defendant is the proposition that there the plaintiff obviously had sufficient time and notice to avoid an impending danger. In some of those cases it appears to be obvious that the plaintiff did in fact fail to keep a proper lookout and that the resulting collisions were proximately caused by such failure. In the instant case, however, it appears to be purely a question of fact whether or not plaintiff did keep a proper lookout. Likewise it is also a fact question as to whether or not plaintiff had sufficient time under the circumstances to avoid defendant's vehicle. We think there is evidence which fairly tends to prove that plaintiff was keeping a sufficient lookout, but that defendant's vehicle sud-

18

denly crossed into plaintiff's lane and that plaintiff did not have time to avoid a collision. Certainly it appears that there was sufficient evidence on these matters to warrant submission to the jury. Contributory negligence becomes a question of law only in a case where the evidence is so clearly lacking in that regard that all reasonable minds would conclude that the plaintiff was guilty of contributory negligence. Hellwig v. Lomelino, 309 Ill App 369, 375, 33 NE2d 174. It is not for this court to substitute its judgment for that of the jury upon controverted questions of fact. We are of the opinion that the question of plaintiff's due care was such a question of fact and that there is sufficient evidence to warrant submitting this issue to the jury and, we hold, therefore, that the trial court properly denied defendant's motion for directed verdict. Geraghty v. Burr Oak Lanes, Inc., 5 Ill2d 153, 163, 125 NE2d 47. We are of the further opinion that there is sufficient evidence to support the jury verdict.

The complaint contained the following charge of negligence:

> "Negligently and carelessly failed to keep and maintain a proper look-out, both ahead and latterly, when by the exercise of ordinary care the approach of plaintiff would be observed and the collision hereinafter related been averted."

Defendant contends there was not sufficient evidence to sustain such charge and that the trial court erred in submitting same to the jury. We do not agree. Taking the evidence in its most favorable aspect to plaintiff's case, it would appear that the defendant's driver did in fact fail to keep a proper lookout since he did not see the Mercury automobile at any time until after the accident and did not see the plaintiff's approaching vehicle until after defendant's trailer

19

had overturned upon the Mercury and that in fact defendant's driver had been intent upon observing only the automobile preceding him and in shifting his gears. The jury may well have inferred from all the evidence that defendant's driver did not keep a proper lookout and that as a result failed to maintain proper control of his tractor-trailer unit so as to keep it in his own lane of traffic.

■ The defendant also complains that the trial court erred in refusing to withdraw the following charge from the jury:

> "Negligently and carelessly failed to decrease and lower the speed of said semi-trailer truck while approaching and going around a curve in the highway, contrary to the provisions of the Ill Rev Stats for 1959, Chapter 95½, Section 146";

The basis of defendant's contention is that the speed of defendant's truck did not contribute to the ensuing collision. This is pure argument in that we think the defendant driver's own testimony would warrant the jury's inferring that the speed of defendant's unit did, in fact, contribute to the resulting collision. We refer to Morrison's testimony when called as an adverse witness which was to the effect that he changed gears and started to pick up speed as soon as the automobile preceding him made its right turn. This increase in speed occurring as the defendant's unit was entering the curve in question may well have contributed to the action of the trailer in slipping into plaintiff's lane.

■ The defendant complains that the amount of the verdict is excessive and that it infers passion and prejudice on the part of the jury; and that the verdict is against the manifest weight of the evidence. In considering the jury's assessment of damages we

20

consider the plaintiff's pain and suffering; his earning capacity and monetary loss accrued and loss of probable future earnings; period of total incapacity, the medical treatment and services that were necessary, necessary hospital and medical expenses, any permanent disability that may have resulted and the deprivation of enjoyments and privileges common to men in like circumstances. In considering these elements, however, we do not substitute our judgment for that of the jury. The amount of damages is primarily a question of fact for jury determination and we will not disturb the result unless it is clear that all reasonable men would agree that the amount is excessive. Hulke v. International Mfg. Co., 14 Ill App 2d 5, 47, 142 NE2d 717; Smith v. Illinois Cent. R. Co., 343 Ill App 593, 99 NE2d 717.

At the time of the occurrence plaintiff was 30 years of age and in good health. His injuries were serious and he experienced severe and prolonged pain. Loss of future earnings would appear to be substantial. The injury to the pelvic nerves was shown to be permanent and that as a result thereof plaintiff has lost control of his excretory organs and has been deprived of his ability to have sexual intercourse. We know of no rule or standard by which a court can compute with mathematical exactness the amount which should be allowed for injuries such as those sustained by plaintiff.

We think reasonable men upon due consideration of the evidence pertaining to damages might well differ in their views on the question whether the sum of $100,000 is in excess of an amount representing fair and reasonable compensation for the injuries which plaintiff sustained.

We find nothing in the record which would justify a conclusion that the verdict indicates passion or prejudice or other improper motive on the part of the

■■■■■■■■■■

jury. Likewise its finding on the issue of damages cannot be said to be against the manifest weight of the evidence. We find no reversible error in this record and accordingly the judgment is affirmed.

Affirmed.

ROETH, P. J. and REYNOLDS, J., concur.