Linda Sue Yelm, a Minor, by Joney K. Yelm, Her Father and Next Friend, Plaintiff-Appellee, v. Gurney Masters, Defendant-Appellant.

Gen. No. 66–49.

Third District.

March 29, 1967.

Claudon & Elson, of Canton, for appellant.

F. B. Brian, of Toulon, and Black, Black & Borden, of Peoria, for appellee.

ALLOY, J.

This is an appeal from a judgment of the Circuit Court of Fulton County in favor of plaintiff Linda Sue Yelm,

a minor, by Joney K. Yelm, her father and next friend, as against defendant Gurney Masters in the sum of $40,000. The post-trial motion was denied and on appeal in this court, defendant contends the cause should be reversed because the verdict was contrary to the manifest weight of the evidence and reflects passion or sympathy and is excessive; that plaintiff did not sustain her burden of showing due care; that there was a limitation on defendant alone as to the giving of instructions and that an instruction was improperly given; that there was prejudicial evidence improperly showing insurance coverage of the defendant and also that a nonexpert familiar with the handwriting of a witness was erroneously prohibited from comparing a genuine signature with a questioned signature.

The record discloses that Linda Sue Yelm, then 8 years of age, suffered injuries to her person as a result of being struck by an automobile driven by defendant Gurney Masters. The evidence was conflicting as to whether or not plaintiff was in the crosswalk when she was struck by defendant's car. The accident occurred in the city of Canton at the intersection of South Main Street and Walnut Street, where stop signs were located at all four corners. Linda Yelm had gotten off a school bus and gone across Walnut Street to mail a letter for her sister. She had come from home on a school bus which had unloaded on South Main Street east of the Junior High School. After she had mailed the letter, she intended to go back to school and started to cross the street where she was struck by the automobile driven by the defendant, Gurney Masters, age 24. The evidence indicated that defendant had driven north on Main Street about 8:30 a. m. and had then turned left onto Walnut Street before the impact occurred. The evidence was conflicting as to whether defendant came to a stop at the intersection.

On the issue of injuries to plaintiff, it was apparent that she was an 8-year-old child and in good health at the time of the accident. At the time of the trial she was 15 years of age and had been in the hospital at Peoria, Illinois, on three different occasions after first having been taken to a hospital in Canton, Illinois. The doctor who treated her found her in great pain and suffering with her right leg turned outward with a marked swelling which caused pain with any movement of the leg. He performed an open reduction operation and found that the head of the femur had been pulled from the hip socket and that it had also been separated from the shaft of the femur. The medical testimony was that only a very severe wrenching blow could produce such a result and that such type of injury was very unusual for a child of 8 years. The head of the femur was placed in the hip socket and pinned to the shaft of the femur. It was necessary to make a 10-inch long incision for the open reduction and the incision was sutured following the operation. A cast was applied to the pelvis and right leg. The medical testimony was to the effect that the dislocation of the head of the femur and the fracture from the shaft of the femur caused the growth center to be broken, fractured and separated at the upper end of the femur by cutting off the normal supply of blood. She was seen in the intervening periods between her visits to the Peoria hospital, by her doctor continuously and X rays revealed the loss of the blood supply to the head of the femur. Such loss of blood supply caused limitation of movement at the hip and a continual marked tightness and discomfort. She was subsequently admitted to the Peoria hospital and again an open reduction was made in the same place for the purpose of fusion of the hip. The purpose of the fusion was to limit complete motion in the hip and alleviate pain. A cast was then applied which she wore for four months. The result was a fusion so that the shaft of the femur

was continuous with the pelvis. The result of the operation is that no motion of the hip joint, no bending or turning or swinging sideways or inward may be made and the child is only able to walk by swinging the whole pelvis so that the pelvis and femur are used as one bone.

The fracture had also damaged the growth center so that the upper end of the femur did not grow normally on the right thigh. Surgical procedure required removal of a one-inch plug of the bone in the left leg just below the knee and the reinsertion of the plug of bone after rotating it. The purpose was to make the overall length of the left leg conform to the overall length of the right leg. The operations have left a scar on the right femur 10 inches in length and scars on either side of the left leg just below the knee. There is a residual half inch difference in the circumference of the right calf as compared to the left calf of the legs and one inch smaller circumference in the right thigh as compared to the left thigh. There is a three-quarter inch shortening of the right leg as compared to the left leg. There is no movement at the hip because of the fusion referred to. There is also a tilt to the pelvis due to the leg length difference and some curvature of the spine to compensate for the pelvic tilt. The child is restricted in her activities because of the loss of motion of her right hip. The conditions described are permanent. It is also noted that the condition of curvature of the spine will be conducive to arthritis in the future due to the abnormal strain that is thrown on the lower part of the lumbar spine caused by walking with a fused hip joint.

The evidence amply sustained the amount the jury awarded for the permanent injuries referred to. The circumstance that special damages are only slightly in excess of $2,000 is not the determining factor. We note that the mother of the child acted as a nurse for the child for an extensive period thus avoiding expense of special nursing bills. We find no basis for concluding that

the verdict resulted from passion or prejudice or that it was excessive and, therefore, find no basis for a reversal or a reduction of the verdict (Schrage v. Allied Paper Corp., 34 Ill App2d 9, 180 NE2d 221).

A special interrogatory was submitted to the jury: "Do you find from the evidence that at the time alleged the defendant Gurney Masters was guilty of negligence which was the proximate cause of the incident complained of?" The jury answered "yes." There was ample evidence in the record to sustain the finding of the jury. There was also evidence to the effect that defendant did not stop before entering the intersection at Main and Walnut Streets or at the best that he made a fast rolling stop and that when he entered the intersection he was going 25 to 35 miles an hour at the time he struck the plaintiff. The evidence in the record clearly makes it a question of fact for the jury which the jury resolved in favor of plaintiff and as against defendant.

On the question of contributory negligence, such question is likewise preeminently a question of fact for the jury. The plaintiff at the time of the incident was a minor between the ages of 7 and 14. There is nothing in the record to indicate that she was guilty of contributory negligence as a matter of law and the conclusion of the jury that plaintiff was not guilty of contributory negligence will not be disturbed by this court on review (Ritter v. Hatteberg, 14 Ill App2d 548, 554, 145 NE2d 119). Defendant contends that the granting of a continuance at the time the case was called for trial was improper. It appears from the record that a major witness for plaintiff was in a hospital unable to come to the court for the purpose of trial. This continuance was granted on November 8, 1965. The actual trial of the case was not had until April 11, 1966. There is no showing that defendant was prejudiced in the trial by reason of the continuance. As a matter of fact, the

192

record tends to show that defendant filed a supplemental answer to written interrogatories referring to the finding of two additional witnesses as late as January 4, 1966. We find no basis for the contention that the court abused its discretion in granting the continuance (Kehrer v. Kehrer, 28 Ill App2d 296, 171 NE2d 239).

Defendant contends that the trial court arbitrarily refused to consider more than 10 instructions to be tendered by defendant, while not similarly restricting plaintiff and that such conduct constitutes prejudicial error. The record in this cause shows that defendant had first tendered 18 instructions. The trial judge requested that counsel for defendant go through his instructions and reduce the number to 10. Defendant's counsel reviewed such instructions and thereafter tendered 10 but withdrew 2 of the instructions during the conference on instructions. The plaintiff had tendered only seven instructions. In argument of the post-trial motion in discussing this question, the court reminded counsel, that counsel had tendered 10 instructions and when he went over them counsel had withdrawn two instructions, which counsel agreed was correct. The court then reminded counsel that the court gave him an opportunity to submit an additional instruction and that counsel had indicated to the court that he did not desire to submit any further instructions.

█ █ It was apparent that the court felt that 18 instructions under the circumstances of the case were unnecessary and that defendant could go over the instructions and reduce the number without in any manner prejudicing defendant's position. It was unnecessary for the court to refer to plaintiff on the question of reducing the number of instructions, since the plaintiff had only tendered seven instructions. In Baker v. Thompson, 337 Ill App 327, at 334, 85 NE2d 924, the court indicated that where issues are simple and did not require the giving of 19 instructions, it was proper to limit the

193

giving of an excessive number. Under chapter 110, § 67 (3) (1965 Ill Rev Stats, c 110, § 67(3)), it is specifically provided that "If the number or length of instructions tendered is unreasonable, the court after examining the instructions may require counsel to reduce the number or length thereof." Since the Illinois Pattern Jury Instructions have been produced (Illinois Pattern Jury Instructions—Civil) the provision of the statute referred to, it appears to this court, can be more readily attained by reducing the number of instructions in appropriate cases. On the basis of the record before us, however, it is apparent that defendant had voluntarily withdrawn certain of the instructions and there was, finally, no rejection of any instructions which were in fact tendered by defendant. While a numerical limitation of instructions is not to be approved as a matter of principle, if the objective of having the jury adequately instructed on a particular theory of the case is attained when the number of instructions are reduced, no prejudice would thereby result. In the case before us, it was apparent that the jury was adequately instructed on defendant's theory of the case and no prejudice arose from the action of the trial court.

██ ██ Two instructions were given on the part of plaintiff to the effect that there was in force in the State of Illinois at the time of the occurrence, a certain statute which provided that whenever stop signs or flashing red signals are in place at an intersection or at a plainly marked crosswalk between intersections, pedestrians have the right-of-way over drivers of vehicles such as set forth in the statute (1965 Ill Rev Stats, c 95½, § 167–§ 70(d)). Another instruction was given in the language of the Illinois Pattern Instruction No. 70.03. The first instruction given was Illinois Pattern Instruction No. 60.01. Each instruction instructed the jury in the language of Illinois Pattern Instruction recommenda-

tion and an instruction similar to 70.03 as tendered by plaintiff was actually tendered by defendant. We find no error in the giving of such instructions.

In the course of the trial, witness Weber was questioned as to his identity, the nature of his employment and by whom he was employed. The witness Weber, who apparently was an adjustor for the insurance carrier, was on the stand testifying as to a purported statement given by one of the witnesses for the purpose of impeachment of such witness. He admitted on cross-examination that the writing in the body of the statement was in his own handwriting and was not in the handwriting of the plaintiff's witness although he stated that the signature was that witness' handwriting. Defendant had placed the witness Weber on the stand and knew that the questioning might be carried into areas which might be embarrassing to defendant. The cross-examination by counsel sought to develop the interest of the witness in connection with the statement and he was asked for whom he had investigated the specific accident. He answered "for an affiliate of the IAA company." A further question as to what kind of company the IAA company was, elicited an answer "Illinois Agricultural Association." He was then asked under whose direction he had taken the statement and named an individual whom he identified as a supervisor for an affiliate of the IAA. He was then asked whether that organization was in operation today, and he stated that it was under another name. When requested to indicate what its present name was he answered "Country Companies." No further questioning was had on this issue nor was any further pursuit made of the nature of the company or its business.

As indicated in Williams v. Matlin, 328 Ill App 645, at 647, 66 NE2d 719, where there is an attempt to take advantage of an impeaching statement or similar statement taken by a representative of an insurance

company, the fact that defendant presents such statement prepared and obtained by an insurer makes material the identity of the person preparing the statement and the nature of his employment for the purpose of showing his interest, if any, in the litigation. In that case the court indicated that the trial court properly denied a motion for a new trial and had in fact erroneously directed the jury to disregard the testimony of the witness as to the identity of the investigator.

 It is noted that in the examination of witness Weber, the word "insurance" was never mentioned and that the only objection made to the interrogation of witness Weber was that it was irrelevant. There was no motion made at the close of the testimony nor during any part of the testimony for a mistrial. It was only after the tender of the statement in evidence and after the witness had been excused that there was a motion made for a mistrial. While the motion would have come too late if it had been proper, we feel that there is no basis for reversal in this cause even had the motion been made at the time of the questioning of witness Weber.

██ ██ Defendant had tendered a local banker who was familiar with the signature of one of the witnesses who testified on behalf of plaintiff for the purpose of proving the signature to the statement taken by Weber. The banker brought with him a savings signature card purportedly containing the signature of the plaintiff's witness. The banker was then asked to compare this signature on such exhibit with the signature on the statement which was tendered in evidence, and upon objection by plaintiff's counsel, the trial court refused to permit such testimony. While it is true that a lay witness who is qualified by testifying that he is acquainted with the handwriting of a particular person could compare the disputed handwriting with an "exemplar" in his own mind's eye and testify whether in his opinion a disputed writing was the writing of the

person it claimed to be, such lay witness could not compare a specimen handwriting with a disputed handwriting. Nonexpert witnesses cannot testify as to their opinion as to the genuineness of handwriting based upon a comparison of writing because, as has been pointed out, the jury or the judges are as capable as the witnesses in making tests in that way (20 Am Jur, Evidence, § 841). While the record in fact shows no direct testimony by the banker that the signature on the savings card was the signature of plaintiff's witness, the ruling of the trial court that such lay person had no better qualification than the jury to make such comparision was proper even if the savings card signature had been so identified.

Since we find no reversible error in the record, the judgment of the Circuit Court of Fulton County will be affirmed.

Affirmed.

STOUDER, P. J. and CORYN, J., concur.