Live Stock National Bank of Chicago, Administrator of Estate of Ignatius Philips, Deceased, Appellee, v. Guy A. Richardson et al., Defendants, and City of Chicago, Appellant.

Gen. No. 40,543.

446

Heard in the third division of this court for the first district at the December term, 1938. Original opinion filed October 25, 1939. Rehearing opinion filed February 14, 1940.

BARNET HODES, Corporation Counsel, for appellant; ALEXANDER J. RESA, LIONEL J. BERC and L. LOUIS KARTON, Assistant Corporation Counsel, of counsel.

PHILIP ROSENTHAL, of Chicago, for appellee; MORRIS S. TELECHANSKY, of Chicago, of counsel.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

Defendant city of Chicago brings this appeal from a judgment for $3,500 entered in the circuit court in favor of plaintiff, Live Stock National Bank of Chicago, administrator of the estate of Ignatius Philips, deceased, and against said defendant. The other defendants, receivers of the street car company, were found not guilty by the verdict of the jury.

It appears that the accident which caused the death of Ignatius Philips, occurred on November 17, 1934, shortly after midnight. Philips and two of his fellow workmen, Daily and McSherry, were all employed by a newspaper publisher. McSherry and Daily went into a tavern at 79th street and Eberhardt avenue about 9 o'clock on said evening and saw Philips standing by the bar. Daily and McSherry each drank three glasses of beer, Philips had none. From there they drove to 89th street where Daily had some business to transact. Upon their return from said errand they went into a tavern where Philips had two beers and the others had three each. Philips offered to drive them home and they left at about 12:30 o'clock in his Ford coupe, all three sitting in the front seat. They proceeded west on 87th street at a speed of 25 to 30 miles an hour and Philips was driving. The lights on the car were burning. It was dark outside.

It further appears that as the automobile reached Eggleston avenue, where there is a curve, the automobile went onto the street car tracks and as it hit said tracks the heads of both Philips and Daily struck the steering wheel, thereby rendering them unconscious. The automobile went over the tracks and jumped the curb. The door of the automobile burst open and Philips was thrown out of the automobile, his head hitting the pavement. The automobile went off the concrete pavement at a point east of Eggleston avenue. McSherry brought the automobile to a stop under the viaduct.

Philips died as a result of the accident and left surviving him his mother, Mrs. Rose Philips, a widow, his brother Richmond and a brother Hamilton. The deceased had been working for the newspaper for about eight months prior to his death, receiving about $65 a month and out of his earnings he contributed $10 a week to the support of his home.

Plaintiff's theory of the case is in substance that the city was in possession and control of that portion of 87th street in which the dangerous and unsafe condition existed in the street; that the city was negligent in permitting that portion of the street east of Eggleston avenue in between the concrete slabs to remain unpaved and to allow a depression to a depth of eight inches adjacent to the surface of the pavement of the street; that the city was negligent in not properly placing signals to give warning of the said depression; that the city was negligent in not placing signals to warn traffic of the curve or turn at Eggleston avenue and was negligent in not properly lighting the street where the curve and the depression existed.

Defendant's theory of the case is that it is not liable because the death of plaintiff's intestate occurred on a State-aid highway over which the city had no control or jurisdiction; that the duty to maintain and the actual maintenance of the said street was in the State; that the city had no authority to erect signs or warning signals on a State-aid highway and that the city was not negligent in permitting the street car rails to be exposed in an unpaved section of the street.

Plaintiff offered in evidence an ordinance of the city of Chicago granting to the Cook county highway department permission to improve as State-aid roads, certain streets including 87th street at the point of the accident in question. Said ordinance (Council Proceedings 1932–1933) contains the following provision:

"Section 2. That the permission hereby granted is so granted upon the condition that plans for each of the improvements of the streets heretofore designated shall be filed with and shall meet the approval of the commissioner of public works of the City of Chicago."

So, we must first determine whether 87th street, being in the city of Chicago, is controlled by the city. Defendant contends that 87th street was a part of the State highway plan and known as Route No. 171.

The evidence shows that 87th street at the scene of the accident was a street in the city of Chicago. The street and flicker lights were maintained and controlled by the city of Chicago and the police on duty reported any "outages" of the flicker lights to the police station of the city of Chicago or to the company who maintained the lights for the city of Chicago. The city of Chicago police patrolled 87th street at the scene of the accident and it was part of one of the police districts of the city of Chicago. Testimony was introduced to show that the parkway in between the concrete slabs was not owned or maintained by the State, and the tracks of the Chicago Surface Lines were laid in the parkway under the supervision and control of the city of Chicago; that there was a curve in the street about 100 feet west of Eggleston avenue which was barely perceptible. Continuing in a straight line along 87th street east and west, there was an open hole directly in line with the eastbound traffic, 6 to 8 inches deep and about 117 feet long and about 31 feet wide and located in this depression are the rails of the street car tracks, the south rail of which was 6 feet from the edge of the eastbound slab.

The evidence further shows there is no light in the parkway between the eastbound concrete slab and the service drive at Eggleston avenue overlooking the curve, nor is there any warning signal of any kind as one approaches Eggleston avenue from the west as a warning of this curve ahead.

Much time is taken up by both sides in debating the question as to whether or not the city is liable for a State-owned road. While the city claims that 87th street is in the control of the State, we fail to find any evidence conclusive of that fact. Two witnesses testified that it was a State-aid road. The proper way for the city to have proved that would have been from records. Certainly, there must be some official record kept which would show wherein the management, control and care is now vested if it has been

ceded to the State as contended. The necessity for such proof is mentioned in the case of *People v. Chicago & A. R. Co.*, 273 Ill. 452, when the court at p. 455, said: ''The action of the highway commissioners can only be shown from the record. If a meeting was held and no action taken this fact could be shown by the record, or if no meeting was held that fact could be put in evidence by testimony that the records did not show any such meeting. The absence of such a meeting cannot be proved by the testimony of the town clerk that no special meeting of the highway commissioners was held for the purpose of certifying the amount to be levied.''

Again in the case of *Village of Brookfield v. Ricker*, 295 Ill. 316, at p. 319, it was said: ''The action of the county board of highway commissioners or other public authorities of the county or State can only be properly shown by the records kept by those authorities.''

In chapter 121, par. 297, sec. 7, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 120.224], it is provided as follows: ''Whenever any part or portion of any highway which is a part of the State highway system and lies and. is situated within the limits of any city, village or incorporated town is taken over, the Department of Public Works and Buildings shall have exclusive jurisdiction and control over only that part of such highway which the State has constructed, or which the local authority has constructed and which has been taken over by the State, and for the maintenance of which the State is responsible, including the hard-surfaced slab, shoulders and drainage ditches.''

Paragraph 298, sec. 8 [Jones Ill. Stats. Ann. 120.225], provides:

''When a part or portion of the highway shall have been taken over it shall thereafter be constructed, re-constructed, repaired, improved and maintained by

the State in accordance with the provisions of this Act.''

It is contended that the original 87th street was owned and controlled by the city of Chicago and no competent or convincing evidence has been put in the record showing when, where or how the care, maintenance and control of this street was transferred to the State of Illinois. That being true, we are forced to the conclusion that this street is still controlled by the city of Chicago.

The evidence shows that the place where the accident occurred was not sufficiently lighted; that Eggleston avenue turned at this point and there was no signal warning or other provision made to prevent an automobile from being driven off the concrete, in which event it would strike the rail which was exposed and naturally deflect such automobile. In addition to that there was a depression in the street pavement. We are of the opinion that the jury was justified in finding that the maintenance and control of the street was vested in the city of Chicago and that said city did not exercise reasonable care in the maintenance and control of said street, and is responsible for the damages resulting therefrom. The city is required to use reasonable care to maintain its streets in a safe condition.

As this entire case is based on a question of fact, it is not necessary that we prolong this opinion by citing many authorities as to the law relating to such facts.

For the reasons herein given the judgment of the circuit court is affirmed.

*Judgment affirmed.*

HEBEL and BURKE, JJ., concur.

### ON REHEARING.

This cause now comes before us on a petition for rehearing which was allowed on December 13, 1939, with

answer thereto filed on December 22, 1939, and this court having considered said documents, as well as the briefs, abstract and record in said cause, we have decided to adhere to the decision as set forth in our former opinion heretofore filed in said cause.

Therefore, for the reasons herein given, the judgment of the circuit court is hereby affirmed.

*Judgment affirmed.*

HEBEL and BURKE, JJ., concur.