TERRI BURNETT, Plaintiff-Appellant, *v.* DEBORAH DONATH *et al.*, Defendants (The City of Champaign *et al.*, Defendants-Appellees).

Fourth District   No. 4—84—0122

Opinion filed August 30, 1984.

132

Richard T. West, of Follmer & West, of Champaign, for appellant.

Craig J. Causeman, of Thomas, Mamer & Haughey, of Champaign, for appellee City of Champaign.

Heyl, Royster, Voelker & Allen, of Urbana (James C. Kearns and Bruce L. Bonds, of counsel), for appellee City of Urbana.

JUSTICE WEBBER delivered the opinion of the court:

Plaintiff appeals from an order of the circuit court of Champaign County which dismissed her amended complaint against the defendants, the city of Champaign and the city of Urbana. The trial court made the requisite finding under Supreme Court Rule 304(a) (87 Ill. 2d R. 304(a)).

The lawsuit arises out of an automobile accident which occurred at the intersection of Green and Wright Streets in Champaign-Urbana at about 11:10 p.m. on March 14, 1981. Plaintiff was a passenger in a car driven by the defendant Head. Head was eastbound on Green Street and was attempting a left turn onto Wright Street. Her vehicle was struck in the intersection by one driven by the defendant Donath, who was westbound on Green. It is unquestioned that plaintiff suffered severe and permanent injuries which left her a quadriplegic.

The record contains indications that the case was settled with defendants Head and Donath. Donath filed counterclaims against Head, the city of Champaign and the city of Urbana for contribution; these are apparently still pending but are not part of this appeal.

The city of Champaign answered the original complaint; the city of Urbana filed a motion to dismiss. Thereafter, Champaign moved to withdraw its answer and file a motion to dismiss. Plaintiff objected, but ultimately the motion was allowed. Plaintiff then sought and was granted leave to file an amended complaint against the cities, both of which filed motions to dismiss the amended complaint. Urbana's motion was lengthy and was adopted by Champaign. It did not specify, other than mentioning section 2—603(b) of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—603(b)), precisely what type of motion it was. However, its prayer was for dismissal with prejudice, and we therefore interpret it as a motion under section 2—615 of the Code (Ill. Rev. Stat. 1983, ch. 110, par. 2—615) claiming legal insufficiency of the amended complaint.

The amended complaint's allegations were largely parallel as to the two cities. The operative facts of the accident were alleged and, in addition thereto, it was alleged that the State high school basketball

tournament was occurring on the same date and had ended shortly before the accident; that the tournament was attended by thousands of people, many of whom were teen-age students. A further allegation was that the intersection was in the heart of "Campus Town" and that on the date of the tournament was one of the most highly traveled intersections in the cities.

The gist of plaintiff's allegations of negligence against the cities is contained in two paragraphs of the amended complaint. These state:

> "That defendant then and there negligently permitted a condition to exist, namely the improper design and construction of said intersection in light of its use on the date in question, which endangered the safe movement of traffic and made no provision for turning lanes or other means, including but not limited to traffic control devices, to allow the eastbound Green Street traffic to turn left unencumbered by the westbound lane of Green Street traffic and gave no warning of said dangerous condition.
>
> Further, defendant negligently failed to provide properly functioning traffic control devices and a properly functioning intersection in that neither was reasonably fit for the use to which they were put on the date in question."

In its ruling dismissing the amended complaint, the trial court cited *Boylan v. Martindale* (1982), 103 Ill. App. 3d 335, 431 N.E.2d 62, and reiterated language from that opinion which the trial court had used in dismissing the original complaint:

> "[I]t would be entirely reasonable for the city to have believed that it fulfilled its duty to maintain a safe intersection by providing the clearly visible and functioning traffic lights. In this regard we must note that the city is only under a duty of *ordinary* care to maintain its streets in a *reasonably* safe condition. (Ill. Rev. Stat. 1979, ch. 85, par. 3—102(a).) By no means is the city to be considered an insurer against all accidents occurring on the public way. *** [W]e conclude that, as a matter of law, the trial court could have correctly determined that the city fully discharged its duty by maintaining an unobstructed, properly working traffic signal at the intersection." 103 Ill. App. 3d 335, 341, 431 N.E.2d 62, 67.

It is thus apparent that the trial court held in substance that the cities had not violated any duty owed to plaintiff. In considering only the element of duty, the trial court was acting properly. The question of duty in a negligence case is a matter of law for the court. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617; *Mieher v.*

*Brown* (1973), 54 Ill. 2d 539, 301 N.E.2d 307.) The questions of breach of duty and proximate cause are questions for the jury. Too often, at the pleading stage, these distinctions become blurred. For a scholarly review of the problem and summation of the authorities, see Justice Jones' concurrence in *Lemings v. Collinsville School District Number Ten* (1983), 118 Ill. App. 3d 363, 367-84, 454 N.E.2d 1139, 1141-52.

Grappling with the concept of duty much resembles juggling of quicksilver. The supreme court in *Mieher* stated:

"Professor Leon Green discusses foreseeability in distinguishing between the judge's role in determining the duty owed and the jury's role in determining the violation of the duty by stating:

'[H]owever valuable the foreseeability formula may be in aiding a jury or judge to reach a decision on the negligence issue, it is altogether inadequate for use by the judge as a basis of determining the duty issue and its scope. The duty issue, being one of law, is broad in its implication; the negligence issue is confined to the particular case and has no implications for other cases. There are many factors other than foreseeability that may condition a judge's imposing or not imposing a duty in the particular case, but the only factors for the jury to consider in determining the negligence issue are expressed in the foreseeability formula.' Green, Foreseeability in Negligence Law, 61 Colum. L. Rev. 1401, 1417-18.

Thus, although foreseeability is generally accepted as the test to be applied by a jury in determining if a duty has been violated, in defining the scope of the duty, other elements must be considered by the court. See Comment, Automobile Design Liability: Larsen v. General Motors and Its Aftermath, 118 U. Pa. L. Rev. 299, 300 (1969).

Section 435 (2) of the Restatement (Second) of Torts provides: 'The actor's conduct may be held not to be a legal cause of harm to another where after the event and looking back from the harm to the actor's negligent conduct, it appears to the court highly extraordinary that it should have brought about the harm.' Dean Prosser observed that this provision of the Restatement recognizes the basic idea 'that liability must stop somewhere short of the freakish and the fantastic.' (Palsgraf Revisited, 52 Mich. L. Rev. 1, 27.) The court in *Larsen* stated that the duty of the manufacturer was only to 'use reasonable care to avoid subjecting the user of the product to an

*unreasonable risk* of injury.' (Emphasis added.) (391 F.2d at 502.) 'Liability is imposed only when an unreasonable danger is created.' 391 F.2d 495, 502 n.3.

It is apparent that the concept of duty in negligence cases is very involved, complex and indeed nebulous. The term is so ill-defined and its boundaries so indistinct that one commentator has observed: 'There is a duty if the court says there is a duty.' And he concluded that the court's pronouncement often reflects the policy and social requirements of the time and community. Prosser, Palsgraf Revisited, 52 Mich. L. Rev. 1, 15; see also Prosser, Law of Torts (4th ed. 1971) 325-326." *Mieher v. Brown* (1973), 54 Ill. 2d 539, 544-45, 301 N.E.2d 307, 309-10.

Duty, then, being such an elusive element, comes to resemble pornography in the sense of the aphorism attributed to a Supreme Court justice who said that he could not give a definition of it, but he knew it when he saw it. Such monostichs may enliven judicial writing but are of little value in resolving issues. Thus, in the abstract, it may be safely said that every man has a duty so to conduct himself that he does not infringe upon the legal interests of another. However, this does nothing more than assume the very point in controversy. If that statement were the end of the matter, a court would have no function in shaping a negligence case.

Duty cannot be only a brooding omnipresence in the sky. It must be refined and connected to the specific facts presented in individual cases. In an effort to accomplish this, the courts have adopted a concept generally called the "scope of duty." This relates, among other things, to the time, place, and circumstances of the incident which gave rise to the lawsuit, and is determined from all of the well-pleaded facts contained within the complaint.

In many instances the scope of duty is so obvious as to require no investigation or comment. For example: the Illinois Rules of the Road (Ill. Rev. Stat. 1983, ch. 95½, par. 11—100 *et seq.*) particularize the general duty not to invade the interests of others on the highway. Section 11—701 requires that one drive on the right side of the roadway, with certain exceptions. Allegations of driving on the left side during heavy rush-hour city traffic would obviously eliminate any question of duty. However, doing the same thing on a lonely country road with no other traffic in sight would raise a scope of duty question. Compare Justice Jones' example in *Lemings v. Collinsville School District Number Ten* (1983), 118 Ill. App. 3d 363, 383, 454 N.E.2d 1139, 1151-52.

In many other instances, duty and the scope of duty cannot be so

readily ascertained. Section 285 of the Restatement (Second) of Torts (1965) indicates that there are at least four sources:

"The standard of conduct of a reasonable man may be

(a) established by a legislative enactment or administrative regulation which so provides, or

(b) Adopted by the court from a legislative enactment or an administrative regulation which does not so provide, or

(c) established by judicial decision, or

(d) applied to the facts of the case by the trial judge or the jury, if there is no such enactment, regulation, or decision."

In the case at bar, the general duty of the defendants derives from common law as codified by statute:

"Our courts have long recognized that, in the absence of an act by the State which divests a local government of jurisdiction over a highway, a local government has an obligation to maintain public highways within its boundaries in a safe condition. (*Hanrahan v. City of Chicago* (1919), 289 Ill. 400; *City of Sterling v. Thomas* (1871), 60 Ill. 264; *Linneen v. City of Chicago* (1941), 310 Ill. App. 274; *Livestock National Bank v. Richardson* (1939), 303 Ill. App. 445; *Tapscott v. City of Chicago* (1939), 301 Ill. App. 322.) Section 3—102 of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1973, ch. 85, par. 3—102) (quoted earlier herein) codifies that obligation. (*Horton v. City of Ottawa* (1976), 40 Ill. App. 3d 544.) Included therein is the duty to warn motorists of dangerous conditions (*Allen v. McCalman* (1923), 229 Ill. App. 221; *Wells v. Village of Kenilworth* (1923), 228 Ill. App. 332), which is codified in section 3—104(b) of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1973, ch. 85, par. 3—104(b)):

'(b) Neither a local public entity nor a public employee is liable under this Act for an injury caused by the failure to provide traffic warning signals, signs, markings or other devices unless such a signal, sign, marking or device was necessary to warn of a condition which endangered the safe movement of traffic, and which would not be reasonably apparent to or anticipated by a person in the exercise of due care.' "*Janssen v. City of Springfield* (1980), 79 Ill. 2d 435, 450, 404 N.E.2d 213, 220.

Section 3—102(a) of the Local Governmental and Governmental Employees Tort Immunity Act, referred to in the *Janssen* opinion, provided:

"(a) Except as otherwise provided in this Article, a local

public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used, and shall not be liable for injury unless it is proven that it has actual or constructive notice of the existence of such a condition that is not reasonably safe in sufficient time prior to an injury to have taken measures to remedy or protect against such condition." (Ill. Rev. Stat. 1973, ch. 85, par. 3—102(a).)

Both it, and section 3—104(b), also referred to in *Janssen*, remain unamended and unaltered today.

The general duty, then, is one of ordinary care, but it remains to be resolved what the scope of that duty was under the circumstances of this case. This, as indicated above, must be gleaned from the well-pleaded facts in the amended complaint.

■ We find that a fatal deficiency exists in such facts. In substance plaintiff alleged, as set forth above, that the cities should have provided left turn lanes on the occasion in question to allow eastbound traffic on Green to turn left unencumbered by westbound traffic on Green. This is a pure conclusion of the pleader. There are no facts alleged which would indicate, by inference or otherwise, that such lanes would have prevented the accident. In retrospect, it is always possible to find some thing or somebody which would have prevented any accident. It is equally plausible and arguable that the cities should have required plaintiff and her driver to remain without the city limits on the night in question.

■ ■ Nor is there any allegation that the existing traffic control lights at the intersection were defective or not operating. In her brief plaintiff argues that the traffic control system was "inadequate." This word is not mentioned in the amended complaint and if it were, its conclusional nature is obvious. In any event, defects in pleadings cannot be cured by argument. *Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976.

■ In sum, there are no well-pleaded facts in the amended complaint which bring the plaintiff within the scope of the cities' duty of ordinary care.

The parties have argued extensively in their briefs as to whether there is a duty on a city to provide more than functioning traffic control devices which create no danger at an intersection. We decline to be drawn into such a debate. The general duty of a city has already been discussed. It is firmly anchored in the common law and in the

statute. What the scope of the duty is, including the placement of additional traffic control devices, must be determined in each case on its own facts. Generalizations could lead only to confusion and disorder in the law.

For the foregoing reasons, the order of the circuit court of Champaign County is affirmed.

Affirmed.

MILLS, P.J., and TRAPP, J., concur.